**DINSMORE INSTRUMENT COM-PANY; Robert C. Dinsmore, Plaintiffs–Appellants,**

v.

**BOMBARDIER, INCORPORATED, d/b/a Sea–Doo/Ski–Doo; Digico LTEE, Defendants–Appellees.**

No. 98–1951.

United States Court of Appeals, Sixth Circuit.

Argued: Sept. 15, 1999

Decided and Filed: Dec. 9, 1999

Michael B. George (argued and briefed), George & Haldy, Flint, Michigan, for Plaintiffs–Appellants.

Dennis Zamplas (argued and briefed), Zamplas & Johnson, Birmingham, Michigan, for Defendant–Appellee Bombardier Inc.

James M. Malloy, III (argued and briefed), Holahan, Malloy, Maybaugh & Monnich, Troy, Michigan, Mary Jo Diegel (briefed), Hutchinson & Paradoski, P.C., Detroit, Michigan, for Defendant–Appellee Digico LTEE.

Before: SUHRHEINRICH, COLE, and GIBSON,* Circuit Judges.

## OPINION

JOHN R. GIBSON, Circuit Judge.

Dinsmore Instrument Company and Robert C. Dinsmore, its president, appeal from an entry of summary judgment in favor of Bombardier, Inc., doing business as Sea–Doo/Ski–Doo, and Digico LTEE on Dinsmore's tort claims. Dinsmore, as we shall refer to the company and its president, argues that there are genuine issues of fact to be decided and asserts that: (1) under Michigan law the application of the economic loss doctrine is limited to suits by aggrieved buyers against non-performing sellers; (2) it has stated a claim for fraud in the inducement which is an exception to the economic loss doctrine; (3) it was denied adequate discovery due to the appellees' conduct; and (4) the torts of intentional interference with existing contractual rights and interference with prospective economic advantage are exceptions to the economic loss doctrine. We affirm.

Representatives of Bombardier contracted with Dinsmore, a manufacturer of compasses, to purchase some 20,000 compasses. The compasses were to be installed by Digico, Bombardier's subcontractor, on personal jet-ski recreational water vehicles manufactured by Bombardier. There were numerous difficulties in the contractual relationship, but in the end Bombardier paid Dinsmore for those sums due under the contract, and no contractual issues are now before us. Dinsmore's tort claims are based on two theories: (1) Bombardier was really attempting to obtain Dinsmore's trade secrets and drive it out of business; and (2) Digico was interfering with the two companies' contractual relationship in an attempt to improve its own business relationship with Bombardier.

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Dinsmore sought over $90 million in damages on its tort claims.

## I.

We review a grant of summary judgment de novo. *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir.1996). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making such a determination, all reasonable factual inferences are drawn in favor of the non-moving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997).

## II.

Dinsmore argues that it properly stated a claim against Bombardier for fraud in the inducement. Whether the claim is viable depends upon whether or not the claim is subject to the economic loss doctrine, and if so, whether the claim survives application of the doctrine. The Michigan Supreme Court adopted the economic loss doctrine in *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612, 618 (Mich.1992), stating: "Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* at 615 (internal quotations omitted).

In determining questions of Michigan law, we follow the decisions of the Michigan Supreme Court.

However, [i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 617 (6th Cir.1998) (internal quotations omitted). When we so consider the issue before us, we conclude that the rationale of the Michigan Supreme Court when it adopted the economic loss doctrine applies regardless of whether the buyer or the seller is the plaintiff:

Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

*Neibarger*, 486 N.W.2d at 615 (quoting *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660, 672 (1985)). The economic loss doctrine helps ensure that contract claims are resolved by contract law. "If a commercial purchaser were allowed to sue in tort to recover economic loss, the UCC provisions designed to govern such disputes . . . could be entirely avoided. . . . In any event, Article 2 would be rendered meaningless and . . . 'contract law would drown in a sea of tort.' " *Id.* at 618 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). We are convinced that the reasoning enunciated by the Michigan courts is broad enough to require the application of the economic loss doctrine to the claim asserted by the seller Dinsmore against the purchaser Bombardier.

Dinsmore argues that the economic loss doctrine does not apply to its fraud claim, because fraud in the inducement is an exception. For the exception to apply, however, the allegations of fraud must be extraneous to the contractual dispute. *Huron Tool · v. Precision Consulting Servs., Inc.*, 209 Mich.App. 365, 532

N.W.2d 541, 546 (Mich.Ct.App.1995). Dinsmore contends that Bombardier's representations did not concern the quality or character of the goods sold, and that its claim for fraud in the inducement is not interwoven with its claims for breach of contract. The record is to the contrary. In paragraph 118 of count 4 of its complaint, Dinsmore alleges that Bombardier's representations "were made in connection with the making of a contract between the plaintiffs and the defendant Bombardier" and further in paragraph 120 of count 4 "[t]hat the Plaintiffs suffered substantial economic losses as a result of entering into the contract, and their losses benefitted ... Bombardier ... and ... Digico." These allegations are judicial admissions that the fraud claims are not extraneous to the contract because the true nature of Dinsmore's action is a claim for breach of contract. The district court found Dinsmore's claim against Bombardier to be a classic contract action, rather than a fraud in the inducement claim, and properly granted summary judgment against Dinsmore.

## III.

Dinsmore also argues that Bombardier failed to promptly respond to its discovery requests. Dinsmore filed a motion to compel. At the hearing, the district court inquired as to whether the discovery matters applied to the UCC part of the case or to the fraud part of the case, and Dinsmore's counsel stated that they related to the fraud part of the case. Therefore, further discovery would not affect our disposition of this appeal, as we have already decided that Dinsmore's fraud claim fails as a matter of law.

## IV.

■ We further uphold the grant of summary judgment against Dinsmore on its tort claims against Digico for intentional interference with existing contractual rights and interference with prospective economic advantage. Dinsmore alleges that Digico altered contract terms regarding the compass sensor specifications and terms of performance and that Digico "made 'bad faith' offers of settlement." However, in paragraph 70 of count 2 of its complaint, Dinsmore admits that Digico was a party to the contractual arrangement regarding Bombardier's purchase of compass sensors from Dinsmore: "[T]he Plaintiffs entered into a contract with Defendant Bombardier's subcontractor, Defendant Digico, as instructed by Defendant Bombardier, for the assembly of 21,500 of the Plaintiffs [sic] No. 1490 compass sensor." Therefore, because Dinsmore's tort claims against Digico arise out of the contractual arrangement between them, those claims must also fail as a matter of law. The economic loss doctrine limits Dinsmore's remedies to those given by the law of contracts. *Neibarger*, 486 N.W.2d at 615–16.

\*      \*      \*

For the foregoing reasons, we affirm the judgment of the district court.