**In re Ronald E. BARKLEY, and Kathleen Barkley, Debtors.**

**Myron E. Wasserman, Trustee, Plaintiff,**

v.

**Household Realty Corp., et al., Defendants.**

**Bankruptcy No. 00–14344. Adversary No. 00–1395.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

June 21, 2001.

Kenneth J. Freeman, Cleveland, OH, for Plaintiff.

Myron E. Wasserman, Cleveland, OH, trustee.

Trish D. Lazich, Asst. Attorney General, Cleveland, OH, for Ohio.

Eric Wasserman, Cleveland, OH, for Citifinacial.

Stephen D. Miles, Dayton, OH, Bradley D. Burland, Beachwood, OH, for Household Realty Corp.

Joh F. Huettner, Cleveland, OH, for Ronald & Kathleen Barkley.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is the Motion for Summary Judgment ("Motion"), filed by the Plaintiff, Myron E. Wasserman, Chapter 13 Trustee ("Trustee"). In response to the Motion, Defendant Betty D. Montgomery, Attorney General of the State of Ohio (the "Attorney General") and Defendant Household Realty Corporation ("Household") filed briefs in opposition.

The Court acquires core matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this Dis-

trict. Following a duly noticed hearing on the Motion, the Court makes the following findings and conclusions:

On June 4, 1994, the Debtors, Ronald and Kathleen Barkley ("Debtors"), executed a note in favor of First Union Home Equity Corporation ("First Union") in the amount of $72,200. A first mortgage on the Debtor's real property located in Warrensville Heights, Ohio, secured that note. First Union later assigned the note and mortgage to TransAmerica Financial Services Company ("TransAmerica"), which filed the mortgage in the Cuyahoga County Recorder's office.

On October 2, 1999, the Debtors executed a mortgage to Household in the amount of $90,072.01. The parties agree that the execution of that mortgage occurred at Household's office with only one witness present. A second person, who did not witness the execution, later attested the mortgage's execution.

From the proceeds of the Household loan, Household disbursed monies to National Real Estate, Ronald Barkley, and Beneficial. The check issued to Beneficial was cashed, and deposited into an account in the name of Household Finance Corporation. Additionally, out of the loan proceeds, Household received a loan origination fee and a sum for life insurance. The parties agree that the first mortgage, held by TransAmerica, was never released.

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on June 13, 2000. On October 23, 2000, the Trustee filed the above-styled Complaint, wherein he seeks to avoid the mortgage deed of Household pursuant to § 544(a) of the Bankruptcy Code and § 5301.01 of the Ohio Revised Code ("O.R.C."). In its Answer, Household asserted defenses relying upon § 5301.234 of the O.R.C. and § 550(e) of the Bankruptcy Code.

The Trustee now moves for summary judgment on a number of bases: (i) that O.R.C. § 5301.234 was enacted in violation of Article II, Section 15(D) of the Ohio Constitution; (ii) that O.R.C. § 5301.234 violates Article IV, Section 5(B) of the Ohio Constitution; (iii) that O.R.C. § 5301.234 violates the Due Process clauses of the Fifth and Fourteenth Amendments of the United States Constitution; (iv) that Household's defenses asserted under § 550(e) of the Bankruptcy Code are inapplicable to the present case; and (v) that, as a result of some or all of the foregoing, the mortgage held by Household is voidable pursuant to § 544(a) of the Bankruptcy Code.

## I. SECTION 5301.234 OF THE OHIO REVISED CODE

Section 5301.234 of the O.R.C. provides:

(A) Any recorded mortgage is irrebuttably presumed to be properly executed, regardless of any actual or alleged defect in the witnessing or acknowledgment on the mortgage, unless one of the following applies:

(1) the mortgagor, under oath, denies signing the mortgage;

(2) the mortgagor is not available, but there is other sworn evidence of a fraud upon the mortgagor.

(B) Evidence of an actual or alleged defect in the witnessing or acknowledgment on the mortgage is not evidence of fraud upon the mortgagor and does not rebut the presumption that a recorded mortgage is properly executed.

(C) The recording of a mortgage is constructive notice of the mortgage to all persons, including without limitation, a subsequent bona fide purchaser or any other subsequent holder of an interest in the property. An actual or alleged de-

fect in the witnessing or acknowledgment on the recorded mortgage does not render the mortgage ineffective for purposes of constructive notice. Ohio Rev. Code Ann. § 5301.234

Section 5301.234 is to be read in conjunction with O.R.C. § 5301.01. The latter provision reads, in pertinent part: "A ... mortgage ... shall be signed by the ... mortgagor [and] [t]he signing shall be acknowledged by the ... mortgagor ... in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation." Ohio Rev.Code Ann. § 5301.01.

The Ohio Supreme Court has opined: "In review of statutes challenged on constitutional grounds, this Court applies a rational basis test as the standard of review. Applying this standard, the statute should be upheld absent proof of arbitrariness, irrationality, or unreasonableness of the legislature." *Morris v. Savoy,* 61 Ohio St.3d 684, 696, 576 N.E.2d 765, 775 (1991).

 The Ohio Supreme Court has also emphasized that the party challenging a statute has the burden of proof. *State ex rel. Ohio Hair Prods. v. Rendigs,* 98 Ohio St. 251, 120 N.E. 836 (1918); *State ex rel. Euclid–Doan Bldg. Co. v. Cunningham,* 97 Ohio St. 130, 119 N.E. 361 (1918). A statute is presumed to comply with both the Ohio and United States Constitutions; that presumption is overcome only by clear defects in the statute. *State ex rel. Jackman v. Court of Common Pleas,* 9 Ohio St.2d 159, 224 N.E.2d 906 (1967). As a corollary to that presumption, any doubts are to be resolved in favor of constitutionality. *State ex rel. Dickman v. Defenbacher,* 164 Ohio St. 142, 128 N.E.2d 59 (1955). Finally, the Ohio Supreme Court has often noted the general principle that because the state and federal Constitutions are superior to any legislative enactment, a law that violates the constitution is necessarily

void. *See, e.g., Hoffrichter v. State,* 102 Ohio St. 65, 130 N.E. 157 (1921).

### A. Constitutionality under Article II, Section 15(D) of the Ohio Constitution

 The Trustee first argues that § 5301.234 of the Ohio Revised Code was enacted in violation of Article II, Section 15(D) of the Ohio Constitution. That constitutional provision provides:

> No bill shall contain more than one subject, which shall be clearly expressed in its title. No law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections amended shall be repealed.

Ohio Const. Art. II, § 15(D). Bills enacted in violation of that Article are void and of no effect. *Simmons–Harris v. Goff,* 86 Ohio St.3d 1, 711 N.E.2d 203 (1999).

The Ohio Supreme Court has pronounced Section 15(D) of Article II to be "directory in nature." *State ex rel. Ohio AFL—CIO v. Voinovich,* 69 Ohio St.3d 225, 229, 631 N.E.2d 582, 586 (1994); *State ex rel. Dix v. Celeste,* 11 Ohio St.3d 141, 145, 464 N.E.2d 153, 157 (1984). Notwithstanding, that court has invalidated statutes that violate the one-subject mandate. *See, e.g., Goff, supra; State ex rel. Ohio Acad. of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999); *Voinovich, supra; Hoover v. Bd. of County Comm'rs,* 19 Ohio St.3d 1, 482 N.E.2d 575 (1985). The Ohio Supreme Court explains:

> When there is an absence of common purpose or relationship between specific topics in an act and when there are no discernible, practical, rational or legitimate reasons for combining the provisions in one act, there is a strong suggestion that the provisions were

combined for tactical reasons, i.e. log-rolling. Inasmuch as this was the very evil the one-subject rule was designed to prevent, an act which contains such unrelated provisions must necessarily to be held to be invalid in order to effectuate the purposes of the rule.

*Celeste, supra,* at 145, 464 N.E.2d at 157.

The Court has further noted: "The one-subject rule was added to [the Ohio] Constitution in 1851. It was one of the proposals resulting from the Second Constitutional Convention of 1850–1851 ... The one-subject rule is one product of the drafters' desire to place checks on the legislative branch's ability to exploit its position as the overwhelmingly pre-eminent branch of state government prior to 1850." *Sheward, supra,* at 495, 715 N.E.2d at 1098 (citing Kulewicz, *The History of the One–Subject Rule of the Ohio Constitution,* 45 Cleve.St.L.Rev. 591 (1997)).

 To find a violation of Article II, Section 15(D), "a court must determine that various topics contained therein lack a common purpose or relationship, so that there is no discernible practical, rational or legitimate reason for combining the provisions in one Act." *Beagle v. Walden,* 78 Ohio St.3d 59, 62, 676 N.E.2d 506, 507 (1997). "The one-subject provision is not directed at plurality but at disunity in subject matter." *Dix, supra,* at 146, 464 N.E.2d at 158.

*Sheward* represents one example of a case in which the Ohio Supreme Court found a statute in violation of the one-subject rule. There, the court noted that although the bill affected a great number of different titles and chapters, an examination of two of the bill's sections, "carefully selected and compared in isolation, could support a finding" of a common purpose. *Sheward,* at 497, 715 N.E.2d at 1100. The court, however, rejected such an approach

in favor of a review of all sections of the bill, and consideration of the commonality thereof. *Id.* Regarding past cases concerning the one-subject rule, *Sheward* commented:

These cases can be perceived as points along a spectrum. At one end, closely related topics unite under a narrowly denominated subject. As the topics embraced in a single act become more diverse, and as their connection to each other becomes more attenuated, so the statement of subject necessary to comprehend them broadens and expands. There comes point past which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such. It becomes a ruse by which to connect blatantly unrelated topics. At the farthest end of this spectrum lies the single enactment which endeavors to legislate on all matters under the heading of 'law.'

*Id.,* at 499, 715 N.E.2d at 1101.

 The Ohio legislature enacted § 5301.234 in Ohio House Bill Number 163 of the 1999 regular session. The voluminous bill amends, enacts, or repeals approximately 53 provisions of the Ohio Revised Code, although it does nothing to modify or repeal § 5301.01 which § 5301.234 materially affects. Consequently, this enactment is violative of Article II, Section 15(D) of the Ohio Constitution. Since much of the bill relates to transportation, and § 5301.234 concerns the recording of mortgages, the Trustee argues that the statute's enactment violates Ohio's one-subject rule. The Attorney General responds that the provisions of the bill do in fact have the common relation of "implicat[ing] an individual's ownership interest in both real and personal property." (Attorney General's Reply, 10.)

This Court's examination of Bill Number 163 and the resulting § 5301.234 reveals no commonality of subject matters. The bill contains provisions in the following titles of the Ohio Revised Code: State Government (4 provisions); Counties (3); Municipal Corporations (1); Criminal Procedure (3); Liquor (5); Motor Vehicles (13); Public Utilities (1); Roads and Highways (15); and Taxation (3). Section 5301.234 was the only provision that related to Real Property. The provisions in the Counties title address the regional transit board, the regional transit authority, and suits against county officials—statutes that clearly do not bear relation to a mortgage recording law. Likewise, the sections of the Bill that concerned Motor Vehicles had no relation to the recording of mortgages. They addressed disposition of monies from vehicle registration, highway safety, privacy of personal information, renewal of vehicle registration, driver's license examinations, and the issuance of certificates of registration. A search of all other provisions of the Bill for commonality to § 5301.234 is similarly unfruitful.

House Bill Number 163 contains thirty-one sections, only a few of which contain subtitles. Section 1, the most voluminous of the Bill's sections, is untitled. That section alone enacts or amends statutes concerning: appointment of peace officers, the public employees' retirement and compensation fund, a regional transit authority, compensation of county auditors, police and firemen's pension funds, seizure of property by law enforcement, liquor control enforcement, the highway safety salvage and exchange fund, privacy of information obtained by the registrar of motor vehicles, fees charged by the registrar of motor vehicles, the process for applying for an automobile's certificate of title, a registrar rental fund, automobile insurance, creation of an aviation office in the division of transportation assistance, trans-fer of title of aircrafts, the duties of the department of transportation, creation of divisions within the department of transportation, the duties of the department of public safety, food stamp trafficking, expedition of special transportation projects, excise taxes, and finally the mortgage recording provision at bar. 1999 Ohio H.B. 163.

Section 2 of the Bill simply repeals a set of enumerated statutes. Those provisions repealed are from the following titles: State Government, Counties, Municipal Corporations, Crimes Procedure, Liquor, Motor Vehicles, Public Utilities, Roads, and Taxation. *Id.* Section 3 very briefly appropriates money for all appropriation line items in the Bill. Section 4 is entitled "DOT Department of Transportation," and consists entirely of appropriations for that agency. *Id.* Section 5 of House Bill Number 163 is similarly titled "DHS Department of Public Safety." *Id.* It too is strictly appropriation for the named department. Likewise, Section 6 provides monies for "DEV Department of Development." *Id.* Finally, Section 7 is the provision of appropriations for "PWC Public Works Commission." *Id.*

Section 8, untitled, establishes accounting principles for the Director of Budget and Management. 1999 Ohio H.B. 163. The title to Section 9 is "Lease Payments to OPFC [Ohio Public Facilities Commission], OBA [Ohio Building Authority], and Treasurer." *Id.* Section 10 is untitled, but authorizes a study regarding the need for further resources in local construction. *Id.* Also untitled is Section 11, which requires a report to the Department of Transportation regarding a comprehensive implementation plan for warranties. *Id.* Section 12 mandates the submission of a report from the Ohio Rail Development Commission. *Id.* The Bill's thirteenth sec-

tion concerns receipt of benefits by the Public Employee Retirement System. *Id.*

Sections 14 and 16 concern the requirements of financial responsibility within the Registrar of Motor Vehicles. 1999 Ohio H.B. 163. Section 15 simply repeals "section 3 of Am.Sub.S.B. 20 of the 120th General Assembly." *Id.* The Bill creates a Task Force on Motor Vehicle Titling to investigate changes made possible by new technology in Section 17. *Id.* Section 18 authorizes the governor to execute a deed in the name of the state conveying land to one named individual. *Id.* The nineteenth section amends the Watercraft Certificates of Title Act. *Id.* Sections 20, 25, 26, 27, and 28 instruct which provisions of the Bill do and do not require referenda. *Id.* The sections numbered 21, 22, 23 and 24 implement a new application procedure for a certificate of title for an automobile. 1999 Ohio H.B. 163. Section 29 provides a severability clause, in the event that any part of the bill is declared invalid. Finally, the thirtieth and thirty-first sections of House Bill Number 163 attempt to harmonize some of its amendments, as required by O.R.C. § 1.52(b).

In the face of the staggering breadth of the Bill, the Attorney General's argument that it contains a "common thread among [its] provisions," (Attorney General's Reply., 13.), is untenable. Its claim that the various provisions of the Bill implicate an individual's ownership interests in real and personal property is both overly broad and not entirely accurate. This Court's examination of the Bill does not reveal such a common thread. Moreover, the Attorney General's submission of the common purpose calls to mind *Sheward's* commentary: "There comes a point past which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such." *Sheward,* at 499, 715 N.E.2d at 1101.

Moreover, House Bill Number 163 violates other requirements of Article II, Section 15(D) as well. As discussed above, the provision requires: "No bill shall contain more than one subject, which shall be clearly expressed in its title." Ohio Const. Art. II, § 15(D). Here, the bill contains no title whatsoever, much less a title that would demonstrate some commonality with § 5301.234.

Section 5301.234 lacks a common purpose or relationship with the balance of Bill Number 163. There is no discernible reason for combining the provisions into one bill. As such, the subject bill is similar to that in *Sheward:* an enactment with a great number of diverse sections that lack any true commonality, to which the state now seeks to give an all-encompassing subject to remedy that disunity. Section 5301.234 presents a classic violation of the one-subject rule, and must be held constitutionally infirm.

B. *Constitutionality under Article IV, Section 5(B) of the Ohio Constitution*

■ The Trustee next argues that § 5301.234 is unconstitutional because it violates Ohio evidentiary rule 1008, which is enacted by virtue of Article IV, Section 5(B) of the state constitution.

Ohio evidentiary rule 1008 provides, in pertinent part: "When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine." Ohio R.Ev. 1008. That provision was enacted under the authority of Article IV, Section 5(B), which states: "The Supreme Court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substan-

tive right ... All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Ohio Const. Art. IV, § 5(B).

This constitutional principle has been reinforced by *In re Coy,* 67 Ohio St.3d 215, 616 N.E.2d 1105 (1993). There, the Ohio Supreme Court held that a statute allowing for the admissibility of otherwise inadmissible hearsay testimony was inconsistent with Ohio evidentiary Rule 807. Given that inconsistency, and the enactment of evidentiary rule 807 under Article IV, Section 5(B) of the Ohio constitution, the court found that the statute was of no effect. *Id.,* at 219, 616 N.E.2d at 1108. "Like the Ohio Rules of Civil Procedure, the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *Sheward, supra,* at 491, 715 N.E.2d at 1096 (citing *Coy* ).

The analysis here is similar to that in *Coy.* In § 5301.234, the Ohio legislature has attempted to establish, for purposes of admissibility, the fulfillment of certain questions of fact required under § 5301.01, namely the execution by the mortgagors and the attestations of the witnesses. That is clearly the purpose of the statute's mandate that "any recorded mortgage is irrebuttably presumed to be properly executed." Ohio Rev.Code Ann. § 5301.234(A). Under evidentiary Rule 1008, such a fulfillment of a condition of fact, relating to contents of writings, is necessarily to be determined by the court: "When the admissibility of other evidence of contents of writings ... depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine." Ohio R.Ev. 1008. Due to the plain

conflict between § 5301.234 and evidentiary Rule 1008, Article IV, Section 5(B) of the Ohio Constitution dictates that § 5301.234 "shall be of no further force or effect."

■ The Attorney General argues that because this Court does not employ the Ohio Rules of Evidence, it lacks jurisdiction to consider the issue. That contention, too, is untenable. A federal court "must apply the law of the state's highest court ... [I]f the highest court has not spoken, the federal court must ascertain from all available data what the law is and apply it." *Northland Ins. Co. v. Guardsman Prods., Inc.,* 141 F.3d 612, 617 (6th Cir.1998). *See also Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir. 2001); *Dinsmore Instrument Co. v. Bombardier Inc.,* 199 F.3d 318, 320 (6th Cir. 1999); *Anderson Dev. Co. v. Travelers Indem. Co.,* 49 F.3d 1128, 1131 (6th Cir.1995).

Section 157 of Title 28 of the United States Code confers jurisdiction upon this Court to "hear and determine all cases under title 11 and all core proceedings arising under [T]itle 11, or arising in a case under [T]itle 11 ... Core proceedings include ... matters concerning the administration of the estate ... [and] determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(K). Legislative history instructs the breadth of the granting of jurisdiction over core proceedings: "[A]nything that occurs within a case is a proceeding. Thus, 'proceeding' here is used in its broadest sense." H.R.Rep. No. 595, 95th Cong. 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6400–6401. Similarly, the District Court has referred all cases under Title 11 in this district to the bankruptcy court. Gen. Order No. 84. Because the issues in this proceeding clearly arise under Title 11, concern the administration of the estate, and purport

to determine the validity of liens, this Court maintains jurisdiction over this proceeding. That jurisdiction necessarily includes a determination of any defenses posited.

In order to determine the allegations in the Trustee's Complaint, and the rights of the parties, the Court must determine the constitutionality of § 5301.234. The state evidentiary rule is an integral part of the constitutional inquiry that the Court must perform, an inquiry that pertains to substantive law. As articulated in *Northland Insurance,* the Court must perform its analysis based upon either a holding of the Ohio Supreme Court on the issue, or otherwise upon "*all* available data what the law is." *Northland Insurance,* 141 F.3d at 617 (emphasis added). Among those data that the Court must review is the evidentiary rule that is in apparent conflict with § 5301–234.

■ Herein, it is not the constitutionality of the evidentiary rule that the Court must decide, but the constitutionality of a statute that enacted within the province of the paramount evidentiary rule. That statute is purely substantive law, and so, too, is the use of the evidentiary rule in relation to it. The procedural nature of evidentiary rules in their ordinary function is irrelevant to and distinct from a substantive law issue that touches upon an evidentiary rule in its analysis. *See, e.g., In re Greene,* 223 F.3d 1064, 1072 (9th Cir.2000). The Court, therefore, plainly retains jurisdiction to review the constitutionality of a substantive law that is relied upon in a party's defense to a core-matter adversary proceeding that arises under Title 11. The Attorney General cites to *Briggs v. Ohio Elections Commission,* 61 F.3d 487, 491 (6th Cir.1995), as support for her argument, but that case offers no authority for the proposition offered.

In light of the foregoing, § 5301.234 is inconsistent with Rule 1008 of the Ohio Rules of Evidence, and is therefore invalid under Article IV, Section 5(B) of the state constitution.

C. *Constitutionality under the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution*

The Trustee's final attack on § 5301.234 is based upon the Due Process Clauses of the Fifth and Fourteenth Amendments. That argument focuses on the irrebuttable presumption doctrine, a concept arising out of a handful of United States Supreme Court cases in the early 1970s. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *U.S. Dep't of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); *Cleveland Bd. of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Turner v. Dep't of Employment,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975).

The Trustee asserts that § 5301.234 creates an irrebuttable presumption, and that "statutes creating irrebuttable presumptions have long been disfavored and have been declared unconstitutional by the United States Supreme Court." (Trustee's Memorandum in Support, 6.) The Attorney General responds that the subject statute is distinguishable from those laws previously stricken down under the irrebuttable presumption doctrine, and that the scope of the doctrine has been severely limited in recent years.

The Trustee accurately asserts that the U.S. Supreme Court has determined: "Statutes creating permanent irrebuttable presumptions have long been disfavored

under the Due Process Clauses of the Fifth and Fourteenth Amendments," *Vlandis, supra,* at 446, 93 S.Ct. 2230, and that the Court has invalidated certain statutes on those grounds. Nonetheless, the Trustee's reliance on the irrebuttable presumption doctrine with regard to § 5301.234 is not well placed, for several reasons.

First, the irrebuttable presumption doctrine, as articulated in the Supreme Court cases above, does not concern all statutes containing an irrebuttable presumption. Rather, the doctrine disfavors only statutes that deny a benefit or impose a burden upon all individuals of a certain characteristic. *See, e.g., Vlandis, supra* (invalidating a statute classifying certain students as nonresidents); *Murry, supra* (striking down a statute that classified certain individuals as ineligible for Food Stamps); *Turner, supra* (ruling that statute making pregnant women ineligible for unemployment benefits for a certain period was unconstitutional).[1] Essentially, the doctrine is most concerned with the lack of a hearing afforded to individuals before the relevant classification is made. That concern, and the focus of the doctrine generally, is clearly distinguishable from an irrebuttable presumption in a statute regarding the validity of a mortgage's execution.

Second, the Attorney General argues that "a statutorily defined irrebuttable presumption is not unconstitutional in statutes which regulate economic matters." (Attorney General's Reply, 6.) That argument is not precisely correct, but it is true that the Supreme Court has indicated that socio-economic legislation does not require the rigorous review of the irrebuttable presumption doctrine. For example, *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), plainly distinguished a statute involving a Social Security claim by a recipient's widow from previous irrebuttable presumption cases on the basis that "a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Id.,* at 772, 95 S.Ct. 2457. Similarly, *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), emphasized that a law altering burdens or benefits of economic life are reviewed only to determine whether the legislature acted in an arbitrary and irrational way. *Id.,* at 15, 96 S.Ct. 2882. To extend the irrebuttable presumption doctrine beyond the sphere of individuals' rights, wrote Justice Rehnquist in *Salfi,* "would turn the doctrine ... into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the constitution." *Salfi, supra,* at 772, 95 S.Ct. 2457.

The Trustee grounds his argument in due process language, but the irrebuttable presumption cases clearly contemplate both due process and equal protection concerns. *See, e.g.,* Rotunda & Nowak, *supra,* at § 17.6. By its nature, § 5301.234 could arguably present a case in which a court must review its adherence to the Due Process clauses of the Fifth and Fourteenth Amendments. The Equal Protection clause, however, is inapposite to such a statute. Equal protection requires only that persons under similar circumstances be given similar treatment in the enjoyment of personal rights and the prevention

---

1. *Accord,* 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law,* § 17.6 (3d ed., 1999); Philip J. Prygowki, *When a Hearing Is Not a Hearing,* 44 U.Pitt.L.Rev. 879 (Summer, 1983); *The Supreme Court, 1974 Term,* 89 Harv.L.Rev. 77 (Nov.1975); Note, *The Irrebuttable Presumption Doctrine in the Supreme Court,* 87 Harv.L.Rev. 1534 (May, 1974).

of personal wrongs. *See, e.g., Rowe v. City of Detroit*, 234 F.3d 1269 (6th Cir.2000). The statute at issue here provides for equal treatment of all mortgages, and, moreover, it does not address treatment of individuals' personal rights at all.

Finally, the Attorney General is correct that *Salfi* has limited considerably the impact of the earlier irrebuttable presumption cases. As noted above, the *Salfi* opinion distinguished *Stanley* and *LaFleur*, on the grounds that they concerned fundamentals rights. Justice Rehnquist also addressed *Vlandis*, upon which the Trustee relies heavily in his Motion, and effectively limited its holding to the facts of that case. *Salfi, supra,* at 770–773, 95 S.Ct. 2457. *See also Toll v. Moreno*, 458 U.S. 1, 7 n. 7, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982) (stating "there is legitimate doubt whether at this late date, anything remains of *Vlandis* "). Since then, the Supreme Court has returned to the irrebuttable presumption doctrine with notable infrequency and has shown no desire to expand the doctrine beyond the restricted interpretation of *Salfi. See Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989); *Elkins v. Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978); *Usery, supra.*

For the foregoing reasons, the Trustee's argument that § 5301.234 violates the irrebuttable presumption doctrine is not well found. The Trustee, therefore, has not met his burden of establishing a violation of the due process clauses of the Fifth and Fourteenth Amendments.

## II. SECTION 550(e) OF THE BANKRUPTCY CODE

Household, additionally, relies upon the defenses of Section 550 of the Bankruptcy Code. That provision reads, in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

\*　　\*　　\*　　\*　　\*　　\*

(e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

11 U.S.C. § 550.

Generally, § 550(a) provides the mechanism by which a trustee may recover property that is avoided under any of

the avoidance sections, and § 550(e) gives a replacement lien to a good faith transferee who made any improvements to property before the trustee's recovery. Here, Household argues that it is entitled to a replacement lien under § 550(e), because it is a good faith transferee that paid off previous liens when it granted the Debtors their loan. The Trustee responds that because he does not seek to recover any property, and, secondarily, because Household is not a good faith transferee, § 550 is inapplicable to the facts of this proceeding.

This Court has previously delineated between avoidance and recovery in the context of § 550. *Eisen v. Allied Bancshares Mtg. Corp., L.L.C. (In re Priest)*, 2000 WL 821379 (Bankr.N.D.Ohio 2000). In *Priest*, the Court reviewed the statutory language, the different statutes of limitations, and the separate effects of dismissal, before concluding that " § 544(a) avoidance and § 550 recovery are independent statutory remedies, which means that the Trustee may avoid [a] lien without necessarily recovering it." *Id.*, at *2 (citing *Harrison v. Brent Towing Co. (In re H & S Transp. Co.)*, 939 F.2d 355 (6th Cir.1991); *Roost v. Associates Home Equity Servs., Inc (In re Williams)*, 234 B.R. 801 (Bankr.D.Or. 1999); *Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 499 (D.S.C.2000); *Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750, 758 (Bankr.D.Md.1997)).

Herein, Household acknowledges the defective execution of the mortgage. That enables the Trustee to avoid the mortgage by virtue of § 5301.01 of the Ohio Revised Code and § 544(a)(3), as discussed more fully below. In turn, the avoided interest becomes property of the estate under § 551, which preserves any avoided transfer for the benefit of the estate, and § 541(a)(4), which includes such an interest as property of the estate. That statutory scheme, involving §§ 541, 544, and

551 of the Bankruptcy Code, operates, effectively, to place the property interest in the estate. Therefore, as in *Priest*, "there is no need for the Trustee to recover [the] interest under § 550 and the defenses provided by § 550 are not available" to Household. *Priest, supra*, at *3.

 Further, the Trustee is correct in arguing that Household does not qualify as a good faith transferee. The Bankruptcy Code does not define "good faith," but the Sixth Circuit has allowed inquiry notice to defeat a claim of good faith for purposes of another subsection in § 550. *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049 (6th Cir.1990), *rev'd on other grounds*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). *See also In re McFarland*, 170 B.R. 613, 627 (Bankr. S.D.Ohio 1994). Here, Household concedes that the defective execution of the mortgage took place at its offices. It therefore had actual notice of the defect and cannot be considered a good faith transferee. Thus, even if the § 550 defenses were available to Household, it would not qualify for the defenses asserted under § 550(e).

### III. APPLICABILITY OF SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it would affect the determination of the underlying action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Tennessee Dep't of Mental Health & Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996). An issue of material fact is genuine where a rational fact-finder could find in favor of

either party on the issue. *Anderson, supra,* at 248–249, 106 S.Ct. 2505; *Structurlite Plastics Corp. v. Griffith (In re Griffith),* 224 B.R. 27 (6th Cir. BAP 1998). In a motion for summary judgment, the initial burden is on the movant to establish an absence of evidence to support the nonmoving party's case. *Celotex, supra,* at 322, 106 S.Ct. 2548; *Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (6th Cir. BAP 1998). The burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 590, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *In re Strbac,* 235 B.R. 880, 882 (6th Cir. BAP 1999).

■ The parties agree that there is no genuine issue of material fact in dispute in this proceeding. The applicability of summary judgment therefore depends upon whether the Trustee is entitled to judgment as a matter of law. In the context of a § 544(a) avoidance action, the Trustee's rights are determined by applicable state law. *Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.),* 997 F.2d 1158, 1159 (6th Cir. 1993).

■ As mentioned above, § 5301.01 of the Ohio Revised Code requires that the mortgagor acknowledge the execution in the presence of two witnesses, each of whom must then sign their names in attestation. Ohio Rev.Code Ann. § 5301.01. A mortgage that is not executed in conformance with that provision is deemed invalid, and is not entitled to be recorded. *Citizens Nat'l Bank of Zanesville v. Denison* 165 Ohio St. 89, 133 N.E.2d 329 (1956); *Wright v. Franklin Bank,* 59 Ohio St. 80, 51 N.E. 876 (1898). *See also Simpson v. Zaptocky (In re Zaptocky),* 231 B.R. 260 (Bankr.N.D.Ohio 1998), *aff'd* 232 B.R. 76 (6th Cir. BAP 1999), *aff'd* 250 F.3d 1020 (6th Cir.2001); *Bash v. Lepelley (In re*

*Lepelley),* 233 B.R. 802 (Bankr.N.D.Ohio 1999); *Bash v. Check (In re Check),* 129 B.R. 492 (Bankr.N.D.Ohio 1991).

■ The parties agree that only one person witnessed the execution of the subject mortgage, and that therefore the mortgage execution was defective under § 5301.01. Section 5301.25 dictates the effect of such a mortgage:

> All instruments of writing properly executed for the conveyance or encumbrance of lands . . . shall be recorded in the office of the county recorder in the county of which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former . . . instrument.

Ohio Rev.Code Ann. § 5301.25. Thus, the recording of a defectively executed mortgage does not establish a lien that will prevail over a subsequent bona fide purchaser without knowledge. *Denison, supra,* at 95, 133 N.E.2d at 333.

Section 544(a)(3) of the Bankruptcy Code provides the Trustee with the rights to avoid any transfer or obligation of the debtor that is voidable at state law by "a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case." 11 U.S.C. § 544(a)(3). Since that provision gives the Trustee the same interest in the Debtor's property as that of a bona fide purchaser who obtained the property without any knowledge of a previous encumbrance, the effect, when paired with § 5301.25, is to allow the Trustee to avoid the interest. *See Zaptocky, supra* at 82.

Accordingly, the Trustee's Motion for summary judgment is hereby granted to the extent found herein. Each party is to bear its respective costs.

**IT IS SO ORDERED.**