In re Herbert Russell FARRELL, Jr. Lucy Elizabeth Farrell, Debtors.

Clyde Hardesty, Trustee, Plaintiff,

v.

Equity One Credit Corp., et al., Defendants.

Bankruptcy No. 99–56846. Adversary No. 00–110.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 4, 2001.

Brent A. Stubbins, Graham & Graham, Stubbins Lewis Watson & Erhard Co. LPA, Zanesville, OH, for Plaintiff.

David A. Wallace, Zeiger & Carpenter, Columbus, OH, for Defendant Equity One Credit Corporation.

Paul J. Borowitz, Assistant Muskingum County Prosecuting Attorney, Zanesville, OH, for Plaintiff.

Clyde Hardesty, Newark, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the findings of fact and conclusions of law for the adversary proceeding commenced by Clyde Hardesty, Chapter 7 Trustee ("Plaintiff"). The Plaintiff seeks to invalidate the mortgage interests of Equity One Credit Corp. ("Defendant") in the residential real estate of Herbert Russell Farrell, Jr. and Lucy Elizabeth Farrell ("Debtors"). The Court has concluded that the Defendant's lien rights cannot be avoided. A brief history of this case will illustrate the bases for this decision.

The Debtors own a home at 5680 Twin Hills Drive, Zanesville, Ohio ("Twin Hills"). Twin Hills includes three parcels, as follows: 1.12 acres, 1.81 acres, and 0.69 acres. The Debtors acquired the 1.12 acre parcel on April 15, 1980, and the 1.81 acre and 0.69 acre parcels on November 23, 1981. The Debtors' home is located on the 1.12 acre parcel, but a detached three-and-a-half car garage built by the Debtors in 1987 is located on the 0.69 acre parcel west of the home. Both the home and the garage are accessed by a driveway through the 1.12 acre parcel. The 1.81 acre parcel is a fenced vacant lot on the curve of Twin Hills Drive east of the home. On September 3, 1997, the Debtors quit-claimed to their son, John L. Farrell ("John Farrell"), a fourth and adjacent 1.38 acre parcel with a pole barn, to build a home. There was no consideration for this transfer.

On July 2, 1998, the Debtors executed an Open–End Mortgage ("Mortgage") with the Defendant in the amount of $261,000.00 at the Elby's Restaurant on Route 40, west of Zanesville. The Mortgage was recorded on July 8, 1998. On the face of the Mortgage, the Twin Hills address, which includes the three parcels, is referred to as the address for the property that is mortgaged by the Debtors. The Mortgage also refers to an "Exhibit A" for the description of the property mortgaged. Exhibit A includes a metes and bounds description for the 1.12 acre parcel and permanent parcel numbers for the 1.12 and 1.81 acre parcels. There is no metes and bounds description or permanent parcel number for the 0.69 acres on Exhibit A.

The loan appraisal for the mortgage transaction at issue, however, references the 1.12, 0.69 and 1.81 parcels, and assigned an estimated market value of $330,000.00 as of June 25, 1998. In addi-tion, on July 8, 1998, the bulk of the Mortgage proceeds were used to pay pre-existing mortgages held by Ameriquest Mortgage ("Ameriquest") in the amount of $198,427.10 and National City Bank ("National City") in the amount of $56,934.32. Both Ameriquest and National City held mortgages on the 1.38 and 1.81 acre parcels. National City also held a mortgage on the 0.69 and 1.12 acre parcels.

Approximately a year later, on July 30, 1999, the Debtors filed the instant chapter 7 bankruptcy proceeding. On Schedule A– Real Property, the Debtors listed Twin Hills and assigned a value of $260,000.00. On Schedule D–Creditors Holding Secured Claims, the Debtors listed the Defendant as holding the Mortgage on Twin Hills in the amount of $260,000.00. On August 11, 1999, a Chapter 7 Individual Debtor's Statement of Intention was filed, in which the Debtors indicated that they planned, at that time, to retain Twin Hills and reaffirm the Mortgage.

Shortly after filing, Larry J. McClatchey ("Mr. McClatchey") was appointed as the interim trustee, and the creditors' meeting was conducted on September 8, 1999. Subsequently, on October 4, 1999, Mr. McClatchey filed an Application to Employ Counsel. In this Application, Mr. McClat-chey did not mention Twin Hills as a po-tential asset. Indeed, in his Interim Re-port of Trustee, filed on October 5, 1999, Mr. McClatchey indicated that there was no net value to the estate after liens, ex-emptions and costs of sale, and that Twin Hills would be deemed abandoned pursu-ant to section 554(c) of the United States Bankruptcy Code ("Code"). Mr. McClat-chey, however, resigned on October 13, 1999, because of conflicts discovered sub-sequent to the creditors' meeting and his review of the Debtors' records.

The Plaintiff was appointed as successor trustee on October 22, 1999, and on De-

cember 7, 1999, an Application of Trustee to Employ Counsel was filed on behalf of the Plaintiff. This Application used almost identical language employed by Mr. McClatchey in describing the assets that would be pursued. On February 1, 2000, the Interim Report of Trustee was filed by the Plaintiff. In that report, the Plaintiff indicates that Twin Hills had an unknown net value after liens, exemptions and costs. The Plaintiff further detailed that Twin Hills may be affirmatively abandoned, pursuant to section 554(a) of the Code.

This approach to the administration of Twin Hills changed around the time the Debtors were questioned on behalf of the Plaintiff at a Bankruptcy Rule 2004 examination conducted on March 20, 2000 ("Examination"). During the Examination, the Debtors were questioned about potential assets, including Twin Hills, the 1.38 acre parcel conveyed to John Farrell, and their interests in bank accounts and oil and gas wells, etc. Regarding Twin Hills, the Debtors were questioned on topics critical to the instant litigation; i.e., whether the Mortgage was properly witnessed by two persons, and whether all three parcels that comprise Twin Hills were intended to be subject to the Mortgage.

During the Examination, there appears to have been some discussion on possible ways to settle any potential fraudulent conveyance claim against John Farrell, depending on the outcome of the instant dispute. Also during the Examination, it was indicated for the first time that the Debtors no longer had the ability to reaffirm their scheduled Mortgage and retain Twin Hills. A review of the transcript of the Examination reveals that the Debtors were somewhat unsure on their recollections, but that they testified they thought there were two witnesses at the time the Mortgage was executed. In addition, the Debtor, Mr. Farrell, clearly testified during the Examination, that it was the Debtors' intent to have all three parcels that comprise Twin Hills subject to the Defendant's Mortgage. During the Examination, the significance of the witness issue was explained, and the Debtors were asked to be sure and to provide any supplemental information to the Plaintiff.

Approximately three weeks after the conclusion of the Examination, the instant adversary proceeding was commenced on April 13, 2000. Attached to the complaint were affidavits dated April 5, 2000. According to the language in each affidavit, they were prepared, ". . . to clarify those circumstances involving the execution of the mortgage on July 2, 1998, at Elby's Restaurant." The Debtors indicated in each affidavit, contrary to their testimony given approximately two weeks earlier, that there was only one witness to the execution of the Mortgage.

Based upon the affidavits and other attached documents, the Plaintiff alleges that the Mortgage should be avoided pursuant to section 544(a) of the Code because it was not witnessed by two individuals, as required by section 5301.01 of the Ohio Revised Code. In the alternative, the Plaintiff asserts that the Mortgage should apply only to the 1.12 acre parcel with the home that is described by metes and bounds on the Exhibit A. The Plaintiff also requests that access be granted over the 1.12 acre parcel to allow for the beneficial use and marketing of the 0.69 acre and 1.81 acre parcels. The Plaintiff's goal is to sell Twin Hills free and clear of liens. The instant litigation presents essentially two legal issues that are dispositive of all others; i.e., was the mortgage properly witnessed by two individuals, and if so, does the Defendant have a valid lien on all three of the parcels that comprise Twin Hills by virtue of the Mortgage and/or as a good-

faith transferee pursuant to section 550(e)(1) of the Code.[1]

■ On the first issue of proper execution of the Mortgage, the Court has considered the testimony of the Debtors during the Examination and during the trial. The Court has also considered the trial testimony of Joseph L. Marhefka, III ("Mr. Marhefka"), the closing agent. Unfortunately, neither the Plaintiff nor the Defendant called the best witness on this issue, Crissy Begley, whose name appears on the Mortgage as the second witness. As a result, the Court has been required to assess the relative credibility of the recollections of the Debtors and Mr. Marhefka.

There are at least two possible versions of the events: a) Crissy Begley did attend the closing with Mr. Marhefka and at that time signed as the witness, or b) Crissy Begley did not attend the closing and later signed as a witness at the time she processed the documents for recording. As noted above, during the Examination, the Debtors testified that while their recollections were somewhat vague, they thought there was a second witness. Approximately two weeks later in their affidavits, and approximately a year later at trial, the Debtors now "clearly" recall that there was only one witness. This inconsistency is very damaging to the credibility of the Debtors. At best, it indicates that the events are so distant in time that their recollections are inherently unreliable, or at worst, it suggests that their recollections are based upon the perceived advantage of a particular outcome.

On the other hand, the strength of the testimony of Mr. Marhefka is diminished for at least four reasons. First, Mr. Marhefka testified that he recalls there were three people with him the day of the closing. They were all on their way to an annual weekend camping trip over the July 4th holiday. Yet, he cannot recall the names of any of the individuals or even their genders or ages-except for Crissy Begley. Second, Mr. Marhefka cannot be characterized as a totally disinterested party. At the time, he worked as a closing agent for Prospect Title, which issued the title policy in this case, and he closed this transaction. To the extent the Mortgage is avoidable, a claim could be asserted against Prospect Title and its agents and employees. Third, on cross examination, Mr. Marhefka indicated that Crissy Begley is in Texas, and that he talked to her earlier this year. Inexplicably, she was not presented as a corroborating witness. Fourth, as is the case with the Debtors, the events occurred approximately three years ago. Undoubtedly, Mr. Marhefka has performed numerous closings before and since the transaction at issue.

■ On balance, however, Mr. Marhefka has been consistent in his testimony, unlike the Debtors, and his interest in this litigation is less significant, compared to the Debtors. In the absence of further, more credible evidence, the Court finds and concludes that the Defendant's version of the events is more credible than the Debtors. On this basis, the Court finds and concludes that the Mortgage was properly witnessed.[2]

---

1. In view of the scope of the Court's ruling, a discussion of the access issue is unnecessary. The Plaintiff also sought to invalidate the Mortgage based upon the failure to notify the Debtors of their rescission rights. No evidence on this point was presented at trial, and this issue has not been addressed by the Court.

2. Although not necessary to the conclusion reached in this case, the Court reiterates that O.R.C. § 5301.234, that creates an irrebuttable presumption, cannot be retroactively applied to the instant case where the Mortgage was executed prior to the effective date. *In re Caldwell*, 257 B.R. 241, 244–245 (Bankr. S.D.Ohio 2000), *contra In re Stewart*, 256 B.R.

■ On the second issue of whether all three parcels are subject to the Mortgage, the Court has considered essentially three factors: a) whether the Debtors intended to mortgage all three parcels; b) does the Mortgage contain enough information under applicable standards; and c) whether the Defendant should be shielded from the avoidance powers as a good-faith transferee, pursuant to section 550(e)(1) of the Code. First, the Debtor, Mr. Farrell, clearly testified during the Examination that it was the Debtors' intention to have all three parcels subject to the Mortgage, but that the 1.38 parcel was to be excluded so John Farrell could build a home. Specifically, the Debtor, Mr. Farrell, recollected at the Examination that he initially approached Ameriquest about releasing its lien on the 1.38 parcel, but it declined. The Debtor, Mr. Farrell, however, recollected at the Examination that he was able to convince the Defendant to exclude the 1.38 parcel from the refinancing.

Inexplicably, a year later at trial, this recollection changed. The Debtor, Mr. Farrell, testified that only the 1.12 acre parcel was to be subject to the Mortgage. The Court does not find this later version of the events credible. It is inconsistent with earlier testimony and the bankruptcy pleadings filed on behalf of the Debtors. The Mortgage was scheduled without any limitations or qualifications, and initially was subject to reaffirmation. This version is also inconsistent with the loan appraisal that includes all three parcels. The Court also finds it difficult to understand the logic of the Debtors' current position that they intended to grant a mortgage on only their home, thereby not only excluding the 1.81 parcel, but the 0.69 acre parcel on which the detached garage is located. This is the same garage that, according to the testimony of the Debtor, Mr. Farrell, can only be utilized from the driveway on the 1.12 acre parcel. All these factors, lead the Court to conclude that it was the true intent of Debtors to grant the Defendant a mortgage on all three parcels that comprise Twin Hills.

■ Second, on the issue of the efficacy of the property description, a review of the precedent and treatises reveals that absolute certainty is not required, and that there is significant flexibility on how much information a property description must contain in a wide variety of documents. It is sufficient that the subject property can be identified based upon the contents of the document and other available information.[3] *Roebuck v. Columbia Gas Transmission Corp.*, 57 Ohio App.2d 217, 219–220, 386 N.E.2d 1363, 1365–1366 (Oh.Ct.Appeals, 1977) (discussed requisite description for pipeline easement); *Grimm Iron Works Co. v. Frederick, et al.*, 1941 WL 3358 (Ohio Com.Pl., 1941) (discussed requisite description in an affidavit for a mechanic's lien); *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 86, 326 N.E.2d

259, 260 (Bankr.S.D.Ohio 2000) (In this decision the date of the bankruptcy filing was viewed as the critical date rather than the date of the execution of the mortgage). The Defendant's citation to the case of *In re Zaptocky*, 250 F.3d 1020, 1028, n. 5 (6th Cir. 2001), rehearing en banc denied (August 9, 2001) is not persuasive. The issue of retroactive application does not appear to have been litigated, and the majority and dissenting opinions offer two different versions of why the new provision was not applicable. *In re Zaptocky*, at 1030. Most recently it has been held that the irrebuttable presumption provision violates the "one subject" rule, and is unconstitutional under Ohio law. *In re Barkley*, 263 B.R. 553 (Bankr.N.D.Ohio 2001).

**3.** In addition to the flexible standard in Ohio, mortgages that have been properly executed and recorded, but contain erroneous legal descriptions, may be reformed in line with the intent of the parties. *In re Kildow*, 232 B.R. 686, 694 (Bankr.S.D.Ohio 1999).

676, 685 (S.Ct.Oh.1975), cert. denied 423 U.S. 866, 96 S.Ct. 128, 46 L.Ed.2d 96 (S.Ct. 1975) (discussed requisite description of property covered by mining options contained in deed); *Yoss v. Markley,* 68 N.E.2d 399 (Oh.Com.Pl., 1946) (discussed requisite description in deeds); *Lloyd v. Scamp Realty,* 1981 WL 4735 (Oh.Ct.App., 1981) (discussed requisite description of property in real estate contract); *Walkana v. Hanna,* 1988 WL 117988 (Oh.Ct.App., 1988) (involved purchase agreement that identified property by address); *Lessee of Eggleston v. Bradford,* 10 Ohio 312, 1840 WL 58 (S.Ct.Oh., 1840) (discussed requisite description of property in deed where there are mistakes in the description); 35 O.Jur.3d *Deeds* sec. 41 at 271–272 (describes flexible standard and use of other information to supplement descriptions in deeds); Conveyances, Oh. Real Est. L. & Prac. T31.18 (2d ed.2000) (discusses flexible standard and whether there is enough information in the deed to locate the property).

While the expert witness presented by the Plaintiff, Mary Ann Schenk ("Ms. Schenk"), effectively pointed out the deficiencies in the Mortgage, she was not able to cite any authority that would support the proposition that the use of a metes and bounds description is the only way to a obtain a valid mortgage. Further, Ms. Schenk testified on cross examination that she had no idea what the Debtors intended to mortgage, and that there was no indication on the Mortgage that there was an intention to grant a mortgage on the 1.12 acre parcel fully described but not the 1.81 acre parcel described by only a permanent parcel number.

Exhibit A to the Mortgage not only includes a metes and bounds description for the 1.12 acre parcel but also includes a permanent parcel number for the 1.81 parcel. Ms. Schenk indeed testified that she

was able to locate the 1.81 acre parcel by using the permanent parcel number. While there is no mention of the 0.69 acre parcel on Exhibit A to the Mortgage, the face of the Mortgage document refers to the mortgaged property as having the Twin Hills address. The Debtor, Mr. Farrell, acknowledged during the Examination that Twin Hills includes all three parcels. In view of this acknowledgment, the true intent of the Debtors, and the flexible standard that has been employed, the Court finds and concludes that there is enough information to locate all three parcels, and that they should all be subject to the Mortgage.

■ Third, the Court finds that the Defendant acted reasonably and in good faith, and has as a result paid pre-existing mortgages subsequent to the execution of the Mortgage. Roger Baker, who is a Senior Vice President for Operations for the Defendant ("Mr. Baker"), testified that in accordance with its normal procedures, the Defendant supplied Prospect Title with an address and relied upon Prospect Title to make sure the appropriate property was included. Mr. Baker testified that routinely prior to disbursement, the Defendant would check to make sure that the documents were properly executed and recorded, and that the property described matched the title commitment. Mr. Baker testified that only after this process was completed would the Defendant wire proceeds to Prospect Title for distribution.

The Court is concerned with the lack of clarity in the description, and a better job should have been done. The deficiencies, however, do not emanate from the Defendant, and the Defendant should not be penalized where it has acted reasonably and in good faith based upon the incomplete information supplied by Prospect Title. On this basis, the Court finds and concludes that the Defendant is deemed a

good-faith transferee, and is also entitled to a lien on the three parcels under section 550(e)(1) of the Code, to the extent its loan proceeds were used to pay Ameriquest and National City. *In re Krueger,* 2000 WL 895601 (Bankr.N.D.Oh.2000); *In re Lepelley,* 233 B.R. 802, 807–809 (Bankr.N.D.Oh. 1999).[4] To do otherwise, would provide a windfall to unsecured creditors at the expense of the Defendant that refinanced the property and paid pre-existing mortgages.

In sum, the Court finds and concludes that the Mortgage is valid, as it was properly witnessed by two individuals. The Court finds and concludes that in view of the true intent of the Debtors, the acknowledgment that Twin Hills includes all three parcels, and the flexible standard that has been employed in evaluating the efficacy of property descriptions, that the Mortgage contains sufficient information to constitute an encumbrance on all three parcels. In addition, the Court finds and concludes that to the extent to which the Defendant has paid pre-existing mortgages on the parcels, it is entitled to a lien under section 550(e)(1) of the Code.

The Court notes that in its post-trial brief, the Plaintiff raised for the first time the issue of a surcharge for administrative expenses associated with this litigation. In view of the complex issues appropriately raised by the Plaintiff, the Court may authorize a reasonable award upon the filing and service of a separate request.

**IT IS SO ORDERED.**

---

4. The Plaintiff raises the issue of the date of the transfer in its brief. This Court is persuaded by the reasoning contained in *In re Lepelley* at 809 that the date of the execution of the mortgage is the proper date compared to the date of recordation used by the court in *In re Krueger,* supra.