[Cite as *Wells Fargo Fin. Ohio 1 Mtge. Group v. Lieb*, 2011-Ohio-1988.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

WELLS FARGO FINANCIAL OHIO 1      :
MORTGAGE GROUP

     Plaintiff-Appellee      :      C.A. CASE NO. 23688

v.      :      T.C. NO.    2007CV2175

MICHAEL LIEB, et al.      :      (Civil appeal from
                  Common Pleas Court)

     Defendants-Appellants      :

     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   22nd   day of   April  , 2011.

. . . . . . . . . .

SCOTT A. KING, Atty. Reg. No. 0037582 and TERRY W. POSEY, Atty. Reg. No. 0078292, P. O. Box 8801, 2000 Courthouse Plaza, N.E., Dayton, Ohio 45401
         Attorneys for Plaintiff-Appellee

CHARLES F. ALLBERY, III, Atty. Reg. No. 0006244, 137 N. Main Street, Suite 500, Dayton, Ohio 45402
         Attorney for Defendant-Appellant Dru Lieb

. . . . . . . . . .

OSOWIK, J. (by assignment)

{¶ 1}   Dru Lieb appeals from the judgment of foreclosure entered in favor of Wells Fargo Financial. Because Lieb fails to show that there are issues of material fact that preclude summary judgment on Wells Fargo's foreclosure claim, we will affirm.

# I

{¶ 2}  In January 1984, Dru Lieb and her husband, Michael Lieb, purchased a residence in Kettering, Ohio. They financed the purchase with a mortgage and took joint title. In 1995, Michael, by deed, granted his interest to Dru, who then held sole interest. In 2002, the Liebs refinanced their mortgage with a different bank. Around December 2004, they began to consider refinancing again, this time with Wells Fargo. Michael started talking with two of Wells Fargo's agents. While Dru wanted to refinance, she did not like the terms that the agents were offering. Ultimately, Dru told them that she was not going to sign the promissory note for the loan. The agents told Dru that, in order for the refinance to go through, she did not need to sign the promissory note, but she did need to sign the mortgage that secured the note. Dru agreed to this arrangement.

{¶ 3}  On March 10, 2005, a quit-claim deed bearing Dru's signature was filed and recorded. This deed, dated March 8, 2005, purports to transfer Dru's full interest in the residence to herself and Michael jointly, giving them each a half interest.

{¶ 4}  On March 21, 2005, the refinance closing was held at the Liebs' residence. Present were Dru and Michael and Wells Fargo's two agents. Michael signed a promissory note, and he executed a deed purporting to transfer his half-interest in the residence back to Dru. In addition to various other documents, both Dru and Michael executed the mortgage. The deed and mortgage were filed and recorded. Both documents show that they were acknowledged by notary Felicia R. Woodrum on the day of the closing.

{¶ 5}  On March 14, 2007, after Michael failed to make the monthly payments,

Wells Fargo filed a foreclosure complaint against the Liebs. On August 30, 2007, Dru filed an amended answer, containing counterclaims and crossclaims. On June 2, 2008, Dru filed a motion for summary judgment on Wells Fargo's claims, arguing that the mortgage was not properly acknowledged under R.C. 5301.01 and that her signature on the March 8, 2005 deed was forged.

{¶ 6}   On July 14, 2008, Wells Fargo filed an amended complaint, claiming that it had an equitable mortgage lien on the property and a mortgage by estoppel. Wells Fargo filed a motion for partial summary judgment on its claims and Dru's counterclaims. On November 19, 2008, Wells Fargo filed a motion for summary judgment on its claims in the amended complaint, arguing simply that there was no dispute that Michael was in default under the note and that, therefore, it was entitled to foreclose on the mortgage. Wells Fargo argued that, even if the mortgage were not enforceable under the law because it was not properly acknowledged under R.C. 5301.01, it was entitled to enforce the mortgage in equity.

{¶ 7}   On January 2, 2009, a magistrate issued a decision on Wells Fargo's partial motion for summary judgment, its motion for summary judgment, and Dru's motion for summary judgment. The magistrate granted Wells Fargo summary judgment on its claim against Michael based on the promissory note. But the magistrate denied summary judgment on the claim for foreclosure. The magistrate concluded that there were genuine issues of material fact concerning whether a notary was present at the closing to acknowledge the Liebs' signatures on the mortgage, which prevented a determination of whether the mortgage was valid. The magistrate also found that there was not enough evidence to determine

whether genuine issues of material fact existed concerning whether Wells Fargo could enforce the mortgage in equity. On January 16, 2009, Wells Fargo filed objections to the magistrate's decision.

{¶ 8} On February 10, 2009, the trial court sustained Wells Fargo's objections. The court concluded that there were no genuine issues of material fact concerning the validity and enforceability of the mortgage. It first concluded that the Liebs failed to present sufficient evidence that the deed and mortgage were not validly executed. The court also concluded that Wells Fargo could enforce the mortgage in equity because both Liebs testified that Dru intended to sign the mortgage documents and understood what she was doing. Dru appealed, but this court dismissed her appeal on July 14, 2009, for lack of a final appealable order.

{¶ 9} On September 8, 2009, the trial court entered a final judgment and a decree of foreclosure. The court pertinently found that Michael owed Wells Fargo $331,723.24, plus interest, and it concluded that because Michael was in default Wells Fargo was entitled to foreclose on the mortgage. Finally, the trial court wrote that the judgment-order is a final appealable order and there is no just cause for delay under Civ.R. 54(B).

{¶ 10} Dru appealed.

## II

{¶ 11} Dru presents two assignments of error:

### First Assignment of Error

{¶ 12} "THE TRIAL COURT ERRED IN RENDERING A DECISION WHICH IT

CONSIDERED A FINAL APPEALABLE ORDER, WHEN SUBSTANTIAL ISSUES AND CAUSES OF ACTION IN THE CASE HAVE NOT YET BEEN DETERMINED."

**Second Assignment of Error**

{¶ 13} "THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAINED FOR DETERMINATION."

**A. The Appealed Order Is Final and Appealable**

{¶ 14} In the first assignment of error, Dru appears to argue that the February 10, 2009 order granting Wells Fargo summary judgment on its claims against the Liebs is not a final order. But it was from the court's September 8, 2009 judgment-order that Dru appealed, and that order is final. "Generally, orders confirming a sale and foreclosure orders that find the amounts due to claimants are final, appealable orders. See, e.g., *Third Nat. Bank of Circleville v. Speakman* (1985), 18 Ohio St.3d 119; *Queen City Sav. & Loan Co. v. Foley* (1960), 170 Ohio St. 383; and *Oberlin Sav. Bank Co. v. Fairchild* (1963), 175 Ohio St. 311. However, if claims are still pending in the trial court, the order must have a Civ. R. 54(B) certification to be appealed." *NBD Mortg. Co. v. Marzocco* (Nov. 2, 2001), Montgomery App. No. 18824. Here, the September 8 judgment-order that Dru appealed found the amount due to Wells Fargo and ordered a sheriff's sale of the residence. If unresolved issues remain, the September judgment-order contains the Civ.R. 54(B) certification. The appealed judgment-order is final and appealable.

{¶ 15} The first assignment of error is overruled.

**B. Summary Judgment Is Proper**

{¶ 16} Summary judgment shall be rendered "upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Inc.* (1978), 54 Ohio St.2d 64, 66; see Civ.R. 56(C).

{¶ 17} Dru argues in the second assignment of error that summary judgment on Wells Fargo's foreclosure claim was improper because genuine issues of material fact exist that concern the mortgage's enforceability. First, Dru contends that a factual issue exists concerning whether the mortgage was properly executed. She alleges that the notary who acknowledged their signatures on the mortgage was not present to witness the signing. Second, Dru contends that an issue of fact exists that affects the validity of the March 8, 2005 deed purporting to grant Michael a joint interest in the residence. She asserts that she did not sign it. But neither of these facts is material to the question of whether Wells Fargo is entitled to foreclose on the Liebs' residence.

{¶ 18} Section 5301.01 of the Revised Code states three requirements for a mortgage to be considered validly executed. One of the requirements is that the signing of the mortgage be acknowledged before one of the individuals specified in the statute. See R.C. 5301.01(A)(2). But "Ohio law clearly holds that '[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud.'" *Lasalle*

*Bank N.A. v. Zapata*, 184 Ohio App.3d 571, 2009-Ohio-3200, at ¶21, quoting *Citizens Natl. Bank in Zanesville v. Denison* (1956), 165 Ohio St. 89, 95, superseded by statute as stated in *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, at ¶11. Therefore, between the parties, a mortgage "will be specifically enforced as a contract for a mortgage, whether * * * the defect is in respect to the signing, acknowledgment, or attestation," in order to carry out the intentions of the parties. 69 Ohio Jurisprudence 3d (1977) 86-87, Mortgages, Section 10; see *Seabrooke*, at 169 (saying that "a court may give full effect to a defective instrument in order to carry out the intentions of the parties"), citing Section 28, Article II, Ohio Constitution and R.C. 2719.01. The only exception is fraud. See *Zapata*, at ¶23 (saying that in order to avoid enforcement of a mortgage, fraud must be established with respect to its execution). Dru did not plead fraud in her amended answer.[1]

{¶ 19} Based on her deposition testimony, it appears that Dru was fully aware of what she was doing and intended to execute the mortgage. This is how Dru explained her understanding of the transaction:

{¶ 20} "* * * [W]hat I told them [the agents] initially before I saw the terms and things, I was going to do as usual, which was sign the mortgage, sign the note, and do everything as had happened in the prior [2002] refinancing. But, on this one [refinancing] when I found out that the interest rate was more and started asking Michael questions about why–what is this? I don't understand and stuff like that. I didn't really get an answer that made sense to me. So, I said well, I don't know what this is for. So, you're going to have to

---

[1] The word "fraudulent" is used in the amended answer to describe Wells Fargo's claim. But "fraud" is not affirmatively set forth as a defense like Civ.R. 8(C) requires. Nor is the amended answer's averment of fraud stated with the particularity required by Civ.R. 9(C).

explain it. Well, anyway, everybody got in an uproar, and I told one or other or both of the guys that I was not going to sign the note. And somehow they came back and I don't know if they told me or Michael, but I think it was somehow I got the information that they had checked with their supervisor. Used car deal. And that the loan could still go ahead if I just signed the mortgage. That was–it sounded like it was, like they wanted this to go through no matter what. So I said okay. But, you know, I've got to remain the sole owner and all that kind of stuff. You know, if it's just signing the mortgage, I'll do that. But, so that he can do whatever he wants, but he is going to be the guy on the note and I remember thinking that they were not really–I could not believe they would do it, but it look like they did so."

**{¶ 21}** (Dru Lieb's Depo. 99-101).

**{¶ 22}** Dru was expressly asked whether she had read the mortgage document; she replied that she had. She was expressly asked whether, when she signed the mortgage, she believed that she owned the property; she replied that she did. Then:

**{¶ 23}** "Q.And that document pledged that real estate as security for the payment of the note, that is what the document says, right?

**{¶ 24}** "A.    As far as–I guess."

**{¶ 25}** (Dru Lieb's Depo. 97).

**{¶ 26}** There is no genuine dispute that Dru fully intended to execute a mortgage in favor of Wells Fargo to secure the promissory note that Michael alone had signed. Dru does not say that she did not know that what she was signing was a mortgage document; she does not say that she did not know what it meant to grant a mortgage to a bank in return for a loan. Dru agreed to do what was needed of her for Michael to get the loan. Her only

conditions appear to be that she avoid liability for the note and remain the sole owner of the residence. Both of these conditions were satisfied. Paragraph 12 of the mortgage document provides: "Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; [and] (b) is not personally obligated to pay the sums secured by this Security Instrument * * *." And, when the last closing document was signed, Dru held all the interest in the residence because Michael had signed a deed granting her the half interest that she ostensibly granted to him in the March 10, 2005 deed.

{¶ 27} Dru says that she knew nothing of the March 10, 2005 deed when she signed the mortgage. She says that her signature on it was forged. Still, at the closing, Dru believed that she owned the full interest. If the deed were invalid, like Dru argues, the legal effect would only be that, instead of Michael and Dru each mortgaging a half interest in the property, Dru alone mortgaged the whole interest. But this is what she thought she was doing and intended to do. Whether the March 10, 2005 deed is valid, therefore, is not material.

{¶ 28} In *Lasalle Bank N.A. v. Zapata*, the court enforced a defectively executed mortgage between a mortgagor and a mortgagee. Noting that the mortgagee never asserted a claim of fraud in her answer, the court said, "Rather, she attests only that she did not sign the mortgage deed in the presence of the notary public." *Zapata*, at ¶22. "She does not argue," continued the court, "that she never intended to sign the mortgage." Id. "Therefore," said the court, "we conclude that she should not be permitted to renege on her agreement." Id., citing *Seabrooke*. We conclude the same here. Neither of the issues of fact raised by Dru is

material to whether Wells Fargo may enforce the mortgage. Dru does not allege fraud that would preclude enforcement, and we do not see any such evidence in the record.

{¶ 29} Wells Fargo is entitled to enforce the mortgage as a matter of law. Michael defaulted on the note, so Wells Fargo may foreclose. Based on the evidence, construed most strongly in Dru's favor, this is the only reasonable conclusion.

{¶ 30} The second assignment of error is overruled.

{¶ 31} The judgment of the trial court is Affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

(Hon. Thomas J. Osowik, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Scott A. King
Terry W. Posey
Charles F. Allbery, III
Hon. Mary L. Wiseman