[Cite as *MidFirst Bank v. Stump*, 2017-Ohio-4312.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MidFirst Bank, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 16AP-52 |
| | | (C.P.C. No. 15CVE-5188) |
| Mark E. Stump et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |
| MidFirst Bank, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-189 |
| v. | : | (C.P.C. No. 15CVE-5188) |
| Mark E. Stump et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |
| (Suellen Stump, | : | |
| Defendant-Appellant). | : | |

D E C I S I O N

Rendered on June 15, 2017

**On brief:** *Manley Deas Kochalski LLC,* and *Kyle E. Timken*; *Plunkett Cooney,* and *Amelia A. Bower,* for appellee MidFirst Bank. **Argued:** *Kyle E. Timken* and *Amelia A. Bower.*

**On brief:** *Burman & Robinson,* and *Robert N. Burman,* for appellant Mark E. Stump. **Argued:** *Robert N. Burman.*

**On brief:** *The Tyack Law Firm Co., LPA,* and *Thomas M. Tyack,* for appellant Suellen Stump. **Argued:** *Thomas M. Tyack.*

APPEALS from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1}   In this foreclosure case, defendant-appellant, Suellen Stump ("Suellen"), appeals from the decision of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, MidFirst Bank. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   Suellen and her then-husband, Mark Stump ("Mark"), acquired a survivorship tenancy in real property at 6588 Strathcona Ave., Dublin, Ohio, 43017 (the "property") on April 26, 1996. (Oct. 28, 2015 Mot. for Partial Summ. Jgmt., Ex. A.)

{¶ 3}   On March 9, 2007, Mark obtained a loan of $156,716 from Liberty Mortgage, Inc. ("Liberty"). Mark signed the promissory note, but Suellen did not. At the closing, Mark and Suellen both executed a mortgage that granted Liberty a security interest in the property. The mortgage identified Mark as the "Borrower" on its first page.

{¶ 4}   Of particular relevance here is paragraph 12 of the mortgage, which stated:

> Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

(Mot. for Partial Summ. Jgmt., Ex. C.)

{¶ 5}   The signature page of the mortgage stated the following: "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." *Id.* Both Mark and Suellen signed below this statement on separate signature lines that identified each signer as a "Borrower." Both parties also initialed each page of the mortgage before the signature page. However, only Mark's signature was acknowledged by the notary. *Id.*

{¶ 6}    The same day that Mark and Suellen signed the mortgage, March 9, 2007, Liberty assigned it to Mortgage Electronic Registrations Systems, Inc. ("MERS"). *Id.* The mortgage was recorded on August 6, 2007, by the Franklin County Recorder. (Mot. for Partial Summ. Jgmt., Ex. B.) The assignment was recorded on November 21, 2007. (Mot. for Partial Summ. Jgmt., Ex. C.) On June 9, 2015, MERS assigned the mortgage to MidFirst Bank, and the assignment was recorded two days later. (Mot. for Partial Summ. Jgmt., Ex. D.)

{¶ 7}    Suellen filed a petition for Chapter 7 Bankruptcy in October 2008. (Mot. for Partial Summ. Jgmt., Ex. G & H at 7.)

{¶ 8}    MidFirst Bank filed a foreclosure complaint on June 18, 2015, naming Mark and Suellen as defendants. The complaint stated four claims for relief: breach of contract, foreclosure, reformation of the mortgage, and equitable mortgage. The complaint alleged that the note that Mark had signed was in default, with $142,504.43 still owing, and that MidFirst Bank was the person entitled to enforce it. MidFirst Bank attached a copy of the mortgage and alleged that it was a valid lien on the property given to secure the note. MidFirst Bank sought reformation of the mortgage to conform to what it alleged was the mutual intent of Mark and Suellen to both be named as "Borrowers," in spite of the document's failure to identify Suellen as such in its granting clause, as both had been present at the closing and signed the mortgage. In the prayer for relief, MidFirst Bank sought judgment on the note in its favor, reformation of the mortgage to identify both Mark and Suellen as "Borrowers," and an order of sale of the property with the proceeds to be applied to the amount due on the note. (June 18, 2015 Compl.)

{¶ 9}    On October 28, 2015, MidFirst Bank filed a motion for partial summary judgment, seeking a judgment concerning the enforceability of the mortgage against Suellen's undivided one-half interest in the property. MidFirst Bank argued that the language of the mortgage unambiguously evidenced Suellen's intent to mortgage her interest in the property. As further evidence of her intent, MidFirst Bank attached a number of documents Suellen had signed that referenced the security interest granted by the mortgage, including the Notice of Right to Cancel and a Truth-In-Lending Disclosure statement. (Mot. for Partial Summ. Jgmt., Ex. D & E.) MidFirst Bank also attached a schedule from Suellen's bankruptcy petition that identified the mortgage as a security interest in property she owned. (Mot. for Partial Summ. Jgmt., Ex. G.)

{¶ 10} Suellen filed a memorandum in opposition to MidFirst Bank's motion on December 8, 2015. She attached an affidavit in which she swore that she had never intended to mortgage her undivided one-half interest in the property, and had signed the mortgage solely based on a loan officer's representation that doing so only released her dower interest in Mark's one-half interest in the property. (Dec. 8, 2015 Memo. in Opp., Ex. 1.)

{¶ 11} The trial court sustained MidFirst Bank's motion and granted partial summary judgment in its favor, ruling that the mortgage was enforceable against Suellen's undivided one-half interest in the property. (Jan. 5, 2016 Decision.)

{¶ 12} MidFirst Bank subsequently filed for summary judgment to foreclose on the property, arguing that the undisputed evidence in the record showed Mark had defaulted on the note and the mortgage. (Jan. 8, 2016 Mot. for Summ. Jgmt.) While the motion was pending, Suellen filed a notice of appeal of the trial court's partial summary judgment decision. (Jan. 25, 2016 Notice of Appeal.)

{¶ 13} On February 18, 2016, the trial court sustained MidFirst Bank's motion, granted summary judgment in its favor, and ordered the sale of the property in foreclosure. (Feb. 18, 2016 Jgmt. Entry & Decree in Foreclosure.) Mark and Suellen separately appealed the judgment of the trial court. (Mar. 15, 2016 Notice of Appeal; Mar. 18, 2016 Notice of Appeal.) After mediation, Mark voluntarily dismissed his appeal. (Oct. 17, 2016 Journal Entry of Dismissal, case No. 16AP-203.)

{¶ 14} Suellen's first appeal asserts the following assignment of error:

> The Trial Court erred in granting Summary Judgment in the within cause as there were disputed issues of fact which mandated that Summary Judgment not be granted.

{¶ 15} Her second appeal asserts the following assignment of error:

> The Trial Court erred in granting total Summary Judgment and reaffirming its partial Summary Judgment against Defendant, Suellen Stump, as to the status of her ownership interest in half the real estate in question finding that it was subject to the lien on the note and refinancing done by her husband.

{¶ 16} Because Suellen's appeals and briefing raise identical arguments, our analysis will treat them as a single appeal.

## II. STANDARD OF REVIEW

{¶ 17} A de novo standard applies to appellate review of a summary judgment decision, and is "governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8. The appellate court "applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 18, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

{¶ 18} Civ.R. 56(A) allows a party to "move with or without supporting affidavits for a summary judgment in the party's favor" on any claim in a civil action. "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). Thus, "the moving party bears the initial burden of demonstrating that there are no genuine issues of material fact" for a jury to consider. *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996), discussing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has satisfied its initial burden, "an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Summary judgment is only proper if "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).

{¶ 19} The de novo standard also applies to appellate review of a trial court's interpretation of a contract, as such interpretation is a matter of law. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 19.

## III. ANALYSIS

{¶ 20} Suellen argues that because the mortgage did not identify her as a "Borrower" on its first page, it was ambiguous. Thus, there was a genuine issue of material fact as to her intent when she signed it. She asserts that she only signed the mortgage to release any dower rights she held in Mark's undivided one-half interest in the property. (Appellant's Brief at 7.)

{¶ 21} In response, MidFirst Bank counters that the mortgage unambiguously demonstrates Suellen's intention to grant a security interest in her interest in the property when the document is read as a whole. MidFirst Bank points to the language of the "co-signer" provision in paragraph 12, which states that any borrower who co-signs the mortgage but does not sign or is not obligated on the note, grants such a security interest. The bank also points to other documents that Suellen signed as further evidence of her intent to grant a security interest in the mortgage, such as the notice of right to cancel and the truth in lending disclosure. (Appellee's Brief at 5-9.)

{¶ 22} "Mortgages are subject to the same rules of interpretation and analysis as contracts generally." *CitiMortgage, Inc. v. Brown*, 1st Dist. No. C-140694, 2015-Ohio-5347, ¶ 28, citing *First Fed. Sav. & Loan Assn. v. Perry's Landing, Inc.*, 11 Ohio App.3d 135, 143 (6th Dist.1983). When interpreting a contract, "the primary and paramount objective is to ascertain the intent of the parties. The general rule is that contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989), citing *Employers' Liab. Assur. Corp. v. Roehm,* 99 Ohio St. 343 (1919), syllabus, and *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 246 (1974), paragraph one of the syllabus. "It is a well settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together, and the meaning ascertained from a consideration of each and every part" of the document. *Dodd v. Bartholomew*, 44 Ohio St. 171, 175 (1886).

{¶ 23} Parties are free to "contract for the terms they want, and the 'intent of the parties is presumed to reside in the language they chose to use in their agreement.' " *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, ¶ 35, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996). The language of a contract " 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.' " *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997), quoting *Ohio Crane Co. v. Hicks*, 110 Ohio St. 168, 172 (1924). "Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." *Hope Academy Broadway Campus* at ¶ 35, citing *Henderson-Achert Lithographic Co. v. John Shillito Co.*, 64 Ohio St. 236, 252 (1901). However, "a writing, or writings executed

as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse* at 361.

{¶ 24} Here, the failure of the mortgage to identify Suellen as a "Borrower" in its granting clause does not render the document ambiguous as to the parties' intent. In the signature clause, Suellen signed her name on a line with the pre-printed term "Borrower" next to it. Crucially, paragraph 12 specifically states the following: "Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property," and is "not personally obligated to pay the sums secured by" the mortgage. Thus, the mortgage specifically provides for a party who, like Suellen, is not obligated on the note, but is nevertheless defined as a "Borrower." This paragraph unambiguously indicates that the intention of such a co-signer is "to mortgage, grant and convey that Borrower's interest in the Property."

{¶ 25} Furthermore, under R.C. 5302.04, "[i]n a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated" in the instrument. Here, the mortgage contains no mention of dower rights or any indication that Suellen intended to grant a security interest in anything less than her entire undivided one-half interest in the property.

{¶ 26} Our interpretation of the mortgage is in accord with the Second District Court of Appeal's interpretation of an identical instrument signed in precisely the same manner. *SFJV 2005, LLC v. Ream*, 187 Ohio App.3d 715, 2010-Ohio-1615 (2d Dist.). In *Ream*, only the wife signed the promissory note, and the granting clause of the mortgage only identified her as the "Borrower." *Id.* at ¶ 25. However, both the husband and the wife had "initialed each page of the mortgage and both signed the last page as 'Borrower.' " *Id.* Furthermore, the mortgage contained an identical paragraph 12 specifying that any co-signer granted a security interest in his or her interest in the property secured by the instrument. *Id.* at ¶ 26-27. The Second District rejected the appellant's argument that the mortgage was ambiguous and could be read to only release the husband's dower rights in their marital property:

> Although Paul Ream is not listed as a Borrower/Mortgagor on
> the first page of the mortgage, paragraph 12 of the mortgage

> makes clear that a "Borrower" who signs the mortgage instrument, but does not execute the note, mortgages his interest in the property without assuming liability for repayment of the debt; Paul signed as a "Borrower." There is no mention in the mortgage about the release of dower rights, nor is there any provision that suggests that Paul Ream signed the mortgage for a purpose other than to mortgage his interest in this property.

*Id.* at ¶ 31.

{¶ 27} As in *Ream*, Suellen signed the mortgage as a borrower, yet now claims that she only signed it to release dower rights. However, she initialed every page of the mortgage, including the page containing the language of paragraph 12 stating that a co-signer grants a security interest whether or not indebted on the note. Furthermore, the signature page identified her as a borrower on the line where Suellen signed her name. The mortgage is not ambiguous. Thus, her affidavit asserting an intention inconsistent with the express language of the agreement is inadmissible parol evidence, and the trial court did not err by ignoring it. *Hope Academy Broadway Campus* at ¶ 35.

{¶ 28} Suellen also argues that the notary's failure to acknowledge her signature on the mortgage rendered it defective under the recording statute, R.C. 5301.01. Thus, she believes that the mortgage is invalid and cannot be enforced against her interest in the property. (Appellant's Brief at 11-12.) [1]

{¶ 29} In response, MidFirst Bank asserts that any defect in the execution of the mortgage is immaterial in this case because even a defectively executed mortgage that does not comply with the requirements of the recording statute is enforceable between the parties to it. (Appellee's Brief at 11-13.)

{¶ 30} Under R.C. 5301.01(A), a deed or mortgage "shall be signed" by the grantor or mortgagor, and "[t]he signing shall be acknowledged by the grantor [or] mortgagor * * * before a * * * notary public, * * * who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

{¶ 31} Here, it is undisputed that only Mark's name appears on the notary's acknowledgement on the mortgage. Nevertheless, this defect does not render the

---

[1] In addition, Suellen argues that the trial court could not reform the mortgage because the notary failed to acknowledge her signature on it. However, the trial court never reformed the mortgage. Because Suellen concedes this in her brief, we disregard this argument. (Appellant's Brief at 11.)

instrument unenforceable as to Suellen's interest. We have previously observed that "in the absence of fraud, Ohio law provides for enforcement of a defectively executed conveyance of an interest in land, at least as against the parties to the conveyance." *LPP Mtge. Ltd. v. Williams*, 10th Dist. No. 11AP-1151, 2012-Ohio-3656, ¶ 18, citing *Wells Fargo Fin. Ohio v. Lieb*, 2d Dist. No. 23688, 2011-Ohio-1988, ¶ 18. "Specifically with respect to a mortgage, in the absence of fraud, we will enforce the mortgage agreement, despite the defect, in order to effectuate the intentions of the parties." *Id.* Furthermore, "[t]his rule applies equally where the original mortgagee assigns the mortgage, i.e., the assigned mortgage is enforceable against the mortgagor, despite an alleged defect in the acknowledgement." *Id.*, citing *Lasalle Bank, N.A. v. Zapata*, 184 Ohio App.3d 571, 2009-Ohio-3200, ¶ 21-22 (6th Dist.). Here, no party has alleged that fraud occurred. Thus, MidFirst Bank, the assignee of the mortgage, may enforce its right to foreclose upon the property, including Suellen's undivided one-half interest, as the mortgage unambiguously granted that right to the mortgagee. The trial court did not err in reaching the same conclusion. Thus, the trial court did not err when it granted MidFirst Bank's partial motion for summary judgment or the bank's final motion for summary judgment.

{¶ 32} For the foregoing reasons, Suellen's assignments of error in both appeals are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

———————————